UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMANDA M. BIERER,

    Plaintiff,

    v.                                          Case No. 20-CV-747

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

    Defendant.

## DECISION AND ORDER

Amanda M. Bierer seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On March 27, 2017, Bierer filed an application for a period of disability and disability insurance benefits and a Title XVI application for SSI. (Tr. 13.) She alleged disability beginning on October 1, 2016 due to back injury, insomnia, PTSD, Factor IV Leinden, Long QT Syndrome,[2] strokes, migraines, anxiety, and digestion problems. (Tr. 280.) Bierer's

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.
[2] "Long QT syndromes" are a group of congenital and acquired diseases in which the electrocardiographic QT interval is longer than established measurements for age and sex; the presence of long QT intervals presages arrhythmias and sudden death. Long QT syndromes, Stedman's Medical Dictionary 884890.

applications were denied initially and upon reconsideration. (Tr. 13.) Bierer filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on May 20, 2019. (Tr. 31–67.) Bierer testified at the hearing, as did Adolph Cwik, a vocational expert. (Tr. 31.)

In a written decision issued June 28, 2019, the ALJ found that Bierer had the severe impairments of mild degenerative disc disease of the lumbar and cervical spine, migraines, attention deficit hyperactivity disorder ("ADHD"), anxiety, and depression. (Tr. 16.) The ALJ found that Bierer did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 16–18.) The ALJ further found that Bierer had the residual functional capacity ("RFC") to perform light work, with the following limitations: can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; and can have no exposure to unprotected heights or unprotected moving machinery. (Tr. 18.) As to her mental limitations, the ALJ limited Bierer to understanding, remembering, and carrying out no more than two to three-step instructions; low-stress work only, defined as having only occasional decision making required and occasional changes in the work setting; and occasional interaction with the public, co-workers, or supervisors. (*Id.*)

While Bierer had no past relevant work, the ALJ found that given her age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that she could perform. (Tr. 22–23.) As such, the ALJ found that Bierer was not disabled from October 1, 2016, through the date of the decision. (Tr. 23.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Bierer's request for review. (Tr. 1–5.)

## DISCUSSION

1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

2. *Application to This Case*

Bierer alleges that the ALJ erred in two ways: (1) by improperly assessing the opinions of two of her treating providers—Dr. Martin Baur and Dr. Rakesh Shah and (2) by failing to properly formulate her RFC, specifically, by failing to account for her limitations in

concentration, persistence, or pace and by failing to account for the effects of her migraine headaches. (Pl.'s Br., Docket # 16.) I will address each argument in turn.

### 2.1 Evaluation of Treating Providers' Opinions

#### 2.1.1 Dr. Baur's Opinion

As stated above, the ALJ limited Bierer to light work with postural limitations. In so doing, the ALJ rejected the opinion of her primary care physician, Dr. Martin Baur, who completed a physical RFC questionnaire form on Bierer's behalf on February 6, 2018 opining work preclusive limitations. (Tr. 675–77.)[3] In rejecting both Dr. Baur's opinion and Bierer's claims of disabling pain, the ALJ relied almost entirely on Bierer's normal strength and reflexes upon physical examination and in her limited treatment for back pain. (Tr. 19, 21.)

Bierer argues that the ALJ did not provide a proper assessment of Dr. Baur's opinion. As Bierer's claims were filed on March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.[4] An ALJ must consider all medical opinions in the record regardless of its source; however, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions, including those from the claimant's medical sources. *Id.* § 404.1520c(a). The ALJ must consider an opinion's persuasiveness based on a number of factors, including supportability, consistency, examining relationship, the provider's specialization, and other relevant factors. *Id.* § 404.1520c(c). Supportability and consistency

---

[3] Specifically, Dr. Baur opined that Bierer could sit and stand for only 15 minutes at one time; that she could stand/walk for less than two hours total and sit for about two hours total in an eight-hour workday; would need to take unscheduled breaks once or twice an hour for 5-10 minutes each; can never lift less than 10 pounds; can never climb ladders; will have significant reaching, handling, and fingering limitations; and will miss more than four days per month due to her impairments or treatments. (Tr. 675–77.) Dr. Baur completed an additional RFC questionnaire on March 11, 2019, confirming that his February 2018 opinion was still correct as of March 2019. (Tr. 1071–73.)

[4] As the regulations governing the evaluation of disability for disability insurance benefits and SSI are nearly identical, I will generally refer to the regulations for disability insurance benefits found at 20 C.F.R. § 404.1520c, *et seq.* for ease of reference.

4

are the most important factors to consider in determining the persuasiveness of a medical source's opinion. *Id.* § 404.1520c(b).

Bierer argues remand is required because the ALJ failed to acknowledge supportive medical evidence. (Docket # 16 at 7.) I agree, but only in part. As to Bierer's ability to perform light work, although the ALJ generally rejected Dr. Baur's opinion and her allegations of disabling back pain due to Bierer's mild imaging results and her physical examinations showing relatively normal strength and reflexes (Tr. 19–21), the ALJ clearly believed that Bierer experienced *some* level of pain. The ALJ specifically states that he added additional postural limitations to those opined by the State Agency medical consultants "to more fully account for [Bierer's] subjective complaints of pain" (Tr. 21). And while Bierer faults the ALJ for failing to consider the July 25, 2017 disability evaluation performed by Dr. Kamal Muzaffar where Dr. Muzaffar found her allegations of pain valid (Docket # 16 at 7), the ALJ specifically credited this opinion, stating that Dr. Muzaffar's examination findings were "consistent with the above residual functional capacity." (Tr. 20.)

My pause, however, comes with the ALJ's decision to include no manipulative limitations in the RFC. Dr. Baur opined that Bierer would have significant limitations with reaching, handling, and fingering, limiting her to using her hands, fingers, and arms for ten to twenty percent of the eight-hour workday day (i.e., only occasional use). (Tr. 677.) The ALJ rejected this limitation, finding that it is unsupported by the examination findings documenting normal strength in all extremities and mild cervical spine findings that "do not support such extreme upper extremity limitations." (Tr. 21.) I am not confident, however, that the ALJ thoroughly explored Bierer's upper extremity limitations, specifically her ability to reach. In October 2017, while undergoing physical therapy for dizzy spells, Bierer stated

5

that she became dizzy when reaching overhead. (Tr. 819.) In February 2018, Bierer complained to Dr. Baur of generalized weakness and paresthesia in the arms, noting that her arms go numb when in an overhead position and her hands get tired and weak with repetitive writing. (Tr. 706.) Upon physical examination, Dr. Baur noted that both rotator cuffs exhibited weakness on resistance testing as they fatigued. (Tr. 708.) Dr. Baur completed Bierer's disability paperwork contemporaneous with the examination in which he noted upper extremity limitations. (Tr. 705–06.) Later that month, while undergoing physical therapy for her back pain, the physical therapist noted that Bierer had a limited tolerance for a variety of exercises due to intermittent and quick onset of upper and lower extremity numbness and tingling. (Tr. 857.) For example, Bierer "elected to stop" an overhead raise exercise "due to upper extremity numbness." (Tr. 857.) Given these records, the ALJ is incorrect in finding that "no exam findings document any abnormalities in the upper extremities." (Tr. 21.) Perhaps the jobs to which the VE opined Bierer could perform are still available to those with a reaching limitation. However, as the ALJ did not include one in his hypothetical to the VE, I cannot be sure. As such, remand is necessary for the ALJ to fully consider Bierer's manipulative limitations.

### 2.1.2 Dr. Shah's Opinion

The ALJ found Bierer suffers from ADHD, anxiety, and depression and limited her to understanding, remembering, and carrying out no more than two to three-step instructions; low-stress work only, defined as having only occasional decision making required and occasional changes in the work setting; and occasional interaction with the public, co-workers, or supervisors. (Tr. 18.) In so doing, the ALJ rejected the opinion of her treating psychiatrist, Dr. Shah, who opined that Bierer had extreme deficiencies in her ability to

6

Case 2:20-cv-00747-NJ    Filed 09/07/21    Page 6 of 10    Document 24

sustain attention and persist at simple, routine tasks for extended (2 hour) periods of time and marked limitations in performing work throughout a workday or workweek without interruption, accepting criticism, and responding appropriately to change. (Tr. 670, 1119.) He further opined that Bierer would miss about four days of work per month due to her impairments or treatment. (*Id.*) Bierer underwent two consultative examinations with Dr. Frank Elmudesi, in July 2017 and in April 2018. Although on objective testing Bierer was able to perform serial 7's, could spell the word "world" in reverse, and could follow three-step commands (Tr. 610, 873), Dr. Elmundesi concluded that Bierer would have difficulty performing routine work tasks for any sustained duration of time (Tr. 611, 874).

In rejecting both Dr. Elmundesi's and Dr. Shah's opinions regarding Bierer's ability to concentrate, the ALJ relied on Dr. Elmundesi's objective findings that Bierer displayed a cooperative manner, coherent and logical thought processes, no circumstantiality or tangentiality, adequate memory, and adequate concentration, as well as Dr. Shah's treatment notes documenting improvement with medication. (Tr. 21–22.)

I find the ALJ selectively cited Bierer's mental health treatment records in discounting these two opinions. Although Dr. Shah did note in *one* treatment record in May 2018 that Bierer was better able to focus and concentrate while on her medications (Tr. 1102), Dr. Shah consistently, throughout the treatment relationship, found that Bierer's attention and concentration were poor (Tr. 530, 1083, 1088, 1092, 1098, 1109, 1114), including on the same day she stated she was better able to focus while medicated (Tr. 1103). Furthermore, the ALJ's reliance on Dr. Elmundesi's objective findings to discount Dr. Shah's opinion is particularly suspect when Dr. Elmundesi only evaluated Bierer twice. While the ALJ was not required to give Dr. Shah, as Bierer's treating provider, any particular weight, 20 C.F.R. § 404.1520c(a),

7

the ALJ should consider the nature of the treatment relationship in evaluating the persuasiveness of an opinion, as a long-term provider will likely have a better understanding of the claimant's impairments (especially for conditions where one has good days and bad days), than one who sees only a brief snapshot of the condition, *see id.* § 404.1520c(c). For these reasons, I find remand is required to re-evaluate the opinions of both Drs. Baur and Shah.

### 2.2 Formulation of the RFC

Bierer argues that the ALJ improperly formulated her RFC, specifically by failing to account for her moderate limitations in concentration, persistence, or pace. (Docket # 16 at 11–12.) Bierer further argues that the ALJ did not properly accommodate the effects of her migraine headaches in the RFC. (*Id.* at 14–15.) Because the case is being remanded to re-evaluate the opinion of Dr. Shah, specifically addressing Bierer's ability to sustain concentration and focus, I will not further address her argument regarding how the ALJ accounted for this limitation in her RFC as it will likely change on remand.

Regarding her migraine headaches, while the ALJ did account for her migraines in the RFC by limiting her from exposure to hazards, the ALJ found that Bierer's migraines were not as limiting as alleged because of her lack of treatment after July 2018. (Tr. 20.) I am not convinced the ALJ properly assessed and accounted for Bierer's migraine headaches in the RFC. The ALJ does not appear to take issue with Bierer's statements regarding the frequency of her migraines—experiencing 16-18 migraines per month, with dull headaches in-between. (Tr. 20.) Interestingly, when Bierer underwent the disability evaluation with Dr. Muzaffar in July 2017, he questioned whether the report of her migraine frequency was accurate because she was only given abortive, rather than prophylactic, medications. (Tr. 606.) The record,

8

however, answers this question. Bierer's treating nurse practitioner, Lee David Klemens, noted that because of her underlying psychiatric issues and history of long QT syndrome, her medication choices for migraines were "limited/contraindicated" and thus was continued on the abortive medications. (Tr. 780.) NP Klemens sent an authorization in January 2018 for Bierer to try Botox injections (*id.*); however, he noted in July 2018 that Bierer lost the scheduling number and never set the Botox appointment up (Tr. 1033). Klemens stated that he would have her set up the Botox appointment. (*Id.*)

The ALJ states that the record contains no further treatment for migraines after July 2018, thus indicating that the migraines may not be as limiting as alleged. (Tr. 20.) But Bierer clearly still experienced, and was being medicated for, migraines at the time of the administrative hearing, testifying that she continued to suffer from migraines four to five times per week. (Tr. 50.) She testified that although Imitrex helped stop the migraine, only after she laid down with no light or sound for 45 minutes. (Tr. 50–51.) While it is not clear whether Bierer ever attempted Botox for her migraines, the ALJ did not ask about this at the hearing. Given the difficulties Bierer's co-morbidities create for treating her migraines, I am not convinced the ALJ properly assessed its severity in formulating her RFC. On remand, the ALJ must re-evaluate Bierer's allegations of disabling migraines and properly account for all limitations stemming from them in the RFC.

## CONCLUSION

Bierer seeks reversal and remand of this case on several alleged grounds of error. I agree the ALJ erred in his consideration of Bierer's treating providers' opinions and in assessing her RFC. Thus, remand is required.

Bierer asks for reversal and an award of benefits (Docket # 16 at 16), but that remedy is appropriate only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports but one conclusion—that the claimant qualifies for disability benefits. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). As discussed above, there are unresolved issues the ALJ must sort out on remand. For these reasons, the Commissioner's decision is reversed and the case will be remanded for further proceedings consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of September, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge